IN THE UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

JULIAN A. RIGBY, Individually and    )
on behalf of all others similarly situated,  )
                                 )
          Plaintiff,       )
                                 )
   v.                     )
                                 )   Civil Action No. 7:05-CV-122-HL
FLUE-CURED TOBACCO COOPERATIVE  )
STABILIZATION CORPORATION A/K/A/  )
FLUE CURED TOBACCO COOPERATIVE,  )
                                 )
         Defendant.   )

## MEMORANDUM OF LAW IN SUPPORT OF STABILIZATION'S MOTION TO DISMISS AND TO TRANSFER VENUE

Defendant Flue-Cured Tobacco Stabilization Corporation ("Stabilization") files this memorandum of law in support of its motion to dismiss Count Four of Plaintiff's First Amended Complaint ("the Complaint") and to transfer venue of the remainder of this action to the United States District Court for the Eastern District of North Carolina, Western Division.  Count Four is a breach of contract claim, and it should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure because the forum selection clause in the alleged contract fixes the exclusive venue for contract disputes in the state courts of Wake County, North Carolina.

The remainder of this action should be transferred to the Eastern District of North Carolina because the key witnesses, the documents, and the other relevant evidence all are located within the Eastern District of North Carolina or are within that District's subpoena power.  In addition, the alleged conduct of Stabilization occurred within North Carolina or are written that District's subpoena power.  By contrast, plaintiff does not even reside in the Middle District of Georgia, and he alleges no actions that occurred in the Middle District of Georgia.

## STATEMENT OF FACTS

**A.     Plaintiff Is Not A Resident Of The Middle District Of Georgia, And His Claims Have No Connection With Or Relationship To This District.**

Plaintiff is a resident of Bacon County, Georgia, which is in the Southern District of Georgia.  *See* Complaint, ¶ 1.  Bacon County is more than one hundred miles from the federal courthouse in Valdosta.   Upon information and belief, plaintiff currently is a contract agent for Philip Morris who operates a tobacco receiving station for Philip Morris in Alma, Georgia. *See* Declaration of Arnold Hamm, ¶ 24 (hereinafter *"Hamm Decl."*).  Plaintiff has not alleged any activity or event relating to his claims that occurred in the Middle District of Georgia, where this case was filed.  Stabilization is not aware of a single party or non-party witness with information relevant to this dispute who resides within the Middle District of Georgia.  *See Hamm Decl.,* ¶ 6.

**B.     Stabilization Is Governed By The North Carolina Cooperative Marketing Act; Its Headquarters Are In North Carolina; And Most Of Its Members And Management Reside In North Carolina.**

Stabilization is an agricultural cooperative governed by the provisions of the North Carolina Cooperative Marketing Act, N.C. Gen. Stat. §§ 54-129 to 166 (2001).  Stabilization's headquarters are located in Raleigh, Wake County, North Carolina.  *Hamm Decl.,* ¶¶ 2-5.

Stabilization's membership includes flue-cured tobacco farmers in North Carolina and four other states who rely upon Stabilization to assist them with the marketing of their tobacco. Stabilization was founded in 1946.  Over the course of its long history, Stabilization has had approximately 800,000 members.  Currently, Stabilization has approximately 3,600 eligible members. More than 59% (or approximately 475,000) of Stabilization's former and current members are from North Carolina. Only approximately 11% of Stabilization's former and current members reside in Georgia.  *Hamm Decl.,* ¶ 15.

#840670_3.DOC

Stabilization's directors and officers are overwhelmingly from North Carolina. Stabilization is governed by eleven directors, one of whom is appointed by the Governor of the State of North Carolina. The appointed director resides in Lenoir County, North Carolina, which is within the Eastern District of North Carolina.  Six of the remaining ten directors are elected from North Carolina districts and reside in North Carolina.  Georgia has only one elected director who resides in Metter, Georgia, in Candler County, which is within the Southern District of Georgia.  *Hamm Decl.,* ¶¶ 17-19.  Stabilization's General Manager and Chief Executive Officer, Arnold Hamm, resides in Wake County, North Carolina, which is within the Eastern District of North Carolina.  Stabilization's Chief Financial Officer, Ken Bopp, also resides in Wake County, North Carolina.  As discussed further below, substantially all of Stabilization's operational staff also reside in North Carolina. *Hamm Decl.,* ¶ 16.

**C.     The Witnesses Who Are Likely To Have Information Relevant To This Dispute Reside Largely In North Carolina.**

As discussed further below, the vast majority of potential witnesses who are likely to have information relevant to the matters alleged in plaintiff's complaint reside within the Eastern District of North Carolina where Stabilization is headquartered, or in states that are more convenient to North Carolina than to Georgia.[1]  The majority of the relevant documents are located within the Eastern District of North Carolina, and the major decisions of Stabilization were made within that District.

---

[1] Stabilization has denied all of plaintiff's claims and alleges that the complaint is subject to dismissal on various grounds.  However, in the event the Complaint is not dismissed and the case proceeds to discovery and trial, the Eastern District of North Carolina will provide a more convenient forum for the prosecution of this proceeding for the reasons discussed herein.

1. **Claims Relating To Stabilization's Purposes And Its Right To Continue As An Ongoing Cooperative.**

Plaintiff contends that Stabilization's purpose ended when Congress terminated the federal tobacco price support program in 2004. *See* Complaint, ¶ 10. Stabilization denies that its purposes have ended and responds that the cooperative provides services and benefits that remain critically important to its membership. Plaintiff's allegations regarding Stabilization's purposes raise issues relating to Stabilization historical and current activities and operations that are primarily within the knowledge of Stabilization's past and present directors, officers, employees, and the North Carolina farmers who constitute by far the largest portion of Stabilization's past and present membership.

Seven of Stabilization's current eleven directors reside within 100 miles of the federal courthouse in Raleigh, North Carolina. *Hamm Decl.,* ¶ 19. Bruce L. Flye, a former director of Stabilization and Stabilization's president from May 1992 until June 2005, resides in Battleboro, North Carolina, which is within the Eastern District of North Carolina. *Hamm Decl.,* ¶ 21. Stabilization's key officers and employees, including Arnold Hamm (Stabilization's CEO and General Manager), Kenneth Bopp (Stabilization's Chief Financial Officer), Jimmy Barefoot (Stabilization's Assistant General Director and Manager and Director of Leaf Operations), Mike Lynch (Stabilization's Director of Sales and Marketing) and others, also reside within the Eastern District of North Carolina and can speak to Stabilization's historical marketing activities, as well as its ongoing operations on behalf of its members. *Hamm Decl.,* ¶ 16.

In the event plaintiff's claims are not dismissed prior to trial, there are numerous other individuals who may be called upon to testify concerning Stabilization's purposes and activities and who reside in North Carolina or other locales that are more convenient to North Carolina than to Georgia. For example, potential non-party witnesses with knowledge of Stabilization's

historical operations and Stabilization's continuing relevance and value to farmers include representatives of farmer advocacy groups such as the North Carolina Farm Bureau Federation, the North Carolina Rural Economic Development Center, Inc., and the Rural Advancement Foundation USA, Inc. ("RAFI"), as well as governmental officials, including representatives of the United States Department of Agriculture.   Each of the representatives of the aforementioned non-governmental organizations resides within the 100 miles of federal courthouse in Raleigh, North Carolina.  Representatives of the USDA reside in the vicinity of Washington, D.C., a locale more proximate and convenient to Raleigh, North Carolina than Valdosta, Georgia. *Hamm Decl.,* ¶ 13.

**2.     Stabilization's Purchase And Operation Of The Timberlake Facility.**

The Complaint also challenges Stabilization's purchase and operation of a cigarette manufacturing facility in Timberlake, North Carolina (the "Timberlake Facility").  *See* Complaint, ¶¶ 20-22.   The transaction in question was negotiated and completed within the state of North Carolina. *Hamm Decl.,* ¶ 11**.**  All of the documents relating to Stabilization's purchase of the Timberlake Facility are located in Stabilization's headquarters in Raleigh, North Carolina. *Hamm Decl.,* ¶ 11.  Further, all of the documents relating to the ongoing operations of the Timberlake Facility are located either in Wake County, North Carolina, or in nearby Timberlake, North Carolina. *Hamm Decl.,* ¶ 11.

The Timberlake Facility is owned and operated by U.S. Flue-Cured Tobacco Growers, Inc. ("U.S. Flue-Cured"), a North Carolina corporation and wholly-owned subsidiary of Stabilization.  Although U.S. Flue-Cured is not a party to this litigation, plaintiff's complaint challenges Stabilization's use of this subsidiary to operate the Timberlake Facility.  *See* Complaint, ¶ 36(2).  These allegations potentially raise issues concerning the corporate structure

of U.S. Flue-Cured and its relationship to Stabilization.  The witnesses who are likely to have relevant information concerning such matters are Stabilization's directors and officers and the officers and employees of U.S. Flue-Cured.  All of U.S. Flue-Cured's key officers and employees reside in North Carolina and are within 100 miles of the federal courthouse in Raleigh, North Carolina. *Hamm Decl.,* ¶ 10.

> **3.** **Plaintiff's Alleged Payment Of "Assessment Fees" To Stabilization And Plaintiff's Request For An "Accounting."**

Plaintiff alleges in his Complaint that Stabilization collected certain "assessment fees" that he was required to pay on each pound of tobacco that he marketed, and that he has certain rights and interests in Stabilization's retained earnings as a result. Plaintiff also requests an accounting to determine the specific extent of his alleged interest.

Stabilization denies that it holds any assessment fees allegedly paid by plaintiff, or that plaintiff has any rights in or to Stabilization's retained earnings or other assets or accounts, except as may be provided to qualifying members upon final dissolution of Stabilization in accordance with Stabilization's By-Laws. As set forth in Stabilization's Answer, assessment fees paid by growers were accounted for pursuant to the requirements of federal law and Stabilization's contracts with the Commodity Credit Corporation ("CCC"), an agency of the United States Department of Agriculture.  From 1982-1985, grower assessment monies were maintained by Stabilization in a North Carolina bank account authorized and approved by CCC (the "No Net Cost Fund").  In approximately 1985, the entire balance of that account was transferred to an account maintained and controlled by the CCC (the "No Net Cost Account"). *Hamm Decl.,* ¶ 5.  All assessments fees paid by growers after 1985 were transferred directly to CCC for deposit in the No Net Cost Account.  *See* Answer, ¶ 14.

6

All of Stabilization's records relating to the No Net Cost Fund and the No Net Cost Account are located in Stabilization's headquarters in Raleigh, North Carolina.  All other records of Stabilization that are potentially relevant to plaintiff's request for an "accounting" also are located at Stabilization's headquarters in Raleigh, North Carolina.  *Hamm Decl.,* ¶ 5.  Any records of the USDA or CCC relating to the No Net Cost Account, the No Net Cost Fund, or any assessment fees allegedly paid by plaintiff presumably are located in Washington, D.C.  *Hamm Decl.,* ¶ 5.

**D.      The Events Alleged in the Lawsuit Occurred in North Carolina.**

As suggested by the location of the witnesses and documents, the events relevant to plaintiff's Complaint have occurred, if anywhere, within the State of North Carolina. Stabilization is headquartered in Wake County, North Carolina, within the Eastern District of North Carolina.  Stabilization's records and employees are there, and the decisions regarding its assets and membership were made there.  *Hamm Decl.,* ¶¶ 5, 20.  The Timberlake Facility and U.S. Flue-Cured, both referenced in the Complaint, are located in North Carolina, and Stabilization's day-to-day operations take place in Wake County, within the Eastern District of North Carolina.  *Hamm Decl.,* ¶¶ 5, 16.  *See also* Complaint, ¶ 3 (alleging that Stabilization's "nerve center" is in Raleigh, North Carolina).

**E.      The Contract Alleged By Plaintiff Includes A North Carolina Forum Selection Clause.**

In Count Four of the Complaint, plaintiff alleges that he entered into an agreement with Stabilization in December 2004 that "would allow him to sell his tobacco through both [Stabilization's] marketing centers and others."  *See* Complaint, ¶¶ 48-49.  Stabilization denies that plaintiff entered into any contract with Stabilization during this time.  However, accepting his allegations as true for the purposes of this motion, if plaintiff entered into a marketing

agreement with Stabilization, then he is subject to the forum selection clause contained in that contract, which would require him to bring his contract action in the state courts of Wake County, North Carolina.  The relevant provision of the contract provides as follows:

> **18.    Governing Law; Venue.**  This Agreement shall be construed in accordance with and governed by the laws of the State of North Carolina. <u>Any action brought hereunder must be brought in state courts located in Wake County, North Carolina, and the parties hereto agree to such exclusive venue.</u>

*Hamm Decl.,* ¶¶ 25-26 & Exhs. C & D thereto (emphasis added)**.**

**F.    There Are Two Related Class Actions Already Pending In The Superior Court of Wake County, North Carolina.**

Stabilization presently is a defendant in two putative class action lawsuits that were filed in January and February of 2005 in the Superior Court of Wake County, North Carolina, styled as follows: <u>Dan Lewis et al. v. Flue-Cured Tobacco Cooperative Stabilization Corporation</u>, Number 05 CVS 188 ("Lewis") and <u>Kay W. Fisher et al., v. Flue-Cured Tobacco Stabilization Corporation et al.</u>, Number 05 CV 1938 ("Fisher").   *Hamm Decl.,* ¶ 28 & Exhs. E & F thereto.

The claims alleged in the *Lewis* and *Fisher* complaints overlap substantially with the allegations made by plaintiff in his Complaint.  All three lawsuits seek to compel some form of distribution of Stabilization's assets to its past or present members.  Also, the *Lewis* and *Fisher* complaints allege a putative class that would incorporate the entirety of the class alleged in the plaintiff's Complaint, which appears to seek class certification on behalf of all members of Stabilization located in South Carolina, Florida and Georgia.[2]

Stabilization and the plaintiffs in *Lewis* have reached a settlement that would resolve all claims of the putative class, including the claims belatedly asserted by plaintiff in this action.

---

[2]   *Compare* Amended Complaint, ¶¶ 1, 23 with *Lewis* Amended Complaint, Exh. E, ¶¶ 29-37 and *Fisher* Amended Complaint, Exh. F, ¶¶ 55-59.

*Hamm Decl.,* ¶ 29 & Exh. G.   The parties' motion to preliminarily approve the settlement and to issue notice to the settlement class is pending before the Wake County Superior Court.  If the *Lewis* settlement is finally approved, plaintiff's class action claims would be barred on the grounds of res judicata, and his individual claims would be barred unless he elects to "opt-out" of the Class Settlement.  See, e.g., Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (applying res judicata and full faith and credit to settlement of class action resolved in state court); accord Manji v. New York Life Ins. Co., 945 F. Supp. 919, 923-24 (D.S.C. 1996) (granting summary judgment against plaintiff who was part of settlement class, but who did not opt out of class settlement).

## ARGUMENT

A.      **Count Four of the Complaint Should Be Dismissed Because Of The Exclusive Forum Selection Clause Contained In Plaintiff's Alleged Contract.**

The forum selection clause contained in the marketing contract alleged by plaintiff is enforceable by this Court as a matter of federal law.  See  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed. 2d 513, 523 (1972); P&S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (per curiam) (noting that federal law, not state law, governs the enforceability of forum selection clauses); McNair v. Monsanto Co., No. 1:02-CV-50-2 (WLS) (M.D.Ga. Aug. 22, 2003) (Sands, C.J.).

Plaintiff filed his breach of contract claim in federal court in violation of the forum selection clause in his alleged contract. Therefore, venue in the Middle District of Georgia is improper as to this claim.  Moreover, because the forum selection clause fixes venue exclusively in the state courts of Wake County, North Carolina, the breach of contract claim cannot be transferred because no federal court would be a court of proper venue.  Accordingly, Count Four of the Complaint should be dismissed for improper venue pursuant to Rule 12(b)(3) of the

Federal Rules of Civil Procedure.  See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-90 (11th Cir. 1998) (finding that Rule 12(b)(3) is the appropriate vehicle to dismiss for improper venue based on an exclusive forum selection clause).

**B.     The Remainder Of This Case Should Be Transferred To The Eastern District Of North Carolina, Western Division Under 28 U.S.C. § 1404(a).**

   **1.      Legal standards for a transfer under 28 U.S.C. § 1404(a).**

A motion to transfer a case from one federal district court to another is governed by 28 U.S.C. § 1404(a).  Section 1404(a) requires the court to consider three factors:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. See Bell v. K-Mart Corp., 848 F. Supp. 996, 998 (N.D. Ga. 1994).  The general purpose of § 1404(a) is to prevent the waste of time, judicial resources, and money, and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense.  See Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945, 950 (1964).  This Court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22, 29 (1988).

   **2.      Plaintiff's suit "could have been brought" in the Eastern District of North Carolina.**

Venue would be proper in the Eastern District of North Carolina because Stabilization "resides" in that District and "a substantial part of the events or omissions giving rise to the claim occurred" there.  28 U.S.C. § 1391(a)(1)-(3).  Stabilization is headquartered in Wake County, North Carolina, within the Eastern District of North Carolina, and its board of directors, its officers and management, and its employees are there. *Hamm Decl.,* ¶¶ 5, 16-20; Complaint, ¶ 3.  Accordingly, this action satisfies the provision of 28 U.S.C. § 1404(a), which allows a

transfer to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

> **3.     The convenience of the parties and witnesses weighs heavily in favor of a transfer to the Eastern District of North Carolina.**

"The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a).  A court must focus primarily upon the availability and convenience of <u>key</u> witnesses.  The convenience of one witness may outweigh the convenience of numerous less important witnesses."  <u>McNair v. Monsanto Co.</u>, No. 1:02-CV-50-2(WLS) (M.D. Ga. Aug. 22, 2003) (Sands, C.J.) (original emphasis) (citing <u>LeBoeuf v. Gulf Operators, Inc.</u>, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998); <u>Houk v. Kimberly-Clark Corp.</u>, 613 F. Supp. 923 (W.D. Miss. 1985)).  As discussed herein, almost all party witnesses and virtually every important non-party witness with information potentially relevant to this case reside in the state of North Carolina.  To Stabilization's knowledge, these potential witnesses have no connection to the Middle District of Georgia.  Requiring such witnesses to travel to Valdosta would be highly inconvenient and would cause unwarranted and unnecessary disruption to their personal lives and their respective businesses.

> **4.     The "interests of justice" favor transfer to the Eastern District of North Carolina.**

In considering whether a transfer would further the "interests of justice" for the purposes of 28 U.S.C. § 1404(a), courts generally consider the availability of compulsory process to compel attendance of unwilling non-party witnesses, the ease of access to sources of proof, the burden of jury duty and local interest in the issue, and the administrative duties flowing from court congestion.  <u>See</u> <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 508-509, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843, (1947); <u>accord</u> <u>Chicago R.F. & P. Co. v. Igoe</u>, 220 F.2d 299, 304 (7th Cir. 1955).

Each of these considerations weighs in favor of transferring this action to the United States District Court for the Eastern District of North Carolina.

First, as described above, numerous potential non-party witnesses are located in North Carolina. These persons are not subject to the subpoena power of the courts of the Middle District of Georgia.  See FED. R. CIV. P. 45.  If plaintiff's action is not transferred, the parties may be forced to rely upon the inadequate substitute of videotaped testimony or will bear the considerable expense of transporting the witnesses from North Carolina to Valdosta.  See Hotel Constructors, Inc. v. Seagrave Corp., 543 F. Supp. 1048, 1051 (N.D. Ill. 1982) (noting that a transfer may be based in part on the concern of insuring live testimony of non-party witnesses whenever possible).  In contrast, the only known Georgia witness – plaintiff – would be subject to subpoena in North Carolina's federal courts because he is a party witness.

Second, access to the sources of proof will also be much easier in North Carolina, since the transactions and activities challenged by plaintiff occurred in North Carolina or involve facilities, records and witnesses that are located in North Carolina.

Third, the "interests of justice" are furthered by a transfer because, among other reasons, parallel class action lawsuits, involving similar claims and overlapping putative "class" allegations already are pending in North Carolina's courts.  The presence of related proceedings in North Carolina courts is a factor that tilts in favor of transfer.  Cf. Hoffman v. MedQuist, Inc., No. 1:04-CV-3452-WDS (N.D. Ga. Nov. 16, 2005) (Duffey, J.) (granting defendant's motion to transfer class action to the District of New Jersey where that court already had before it three class action matters before it "which involve the same or substantially similar issues . . ."); Mirasco v. American National Fire Insurance. Co., No. 1:00-CV-947-ODE, 2000 WL 34440850,

*5 (N.D. Ga. July 5, 2000) ("The most persuasive reason for transferring this action is that a related action involving the same issues is pending in the [transferee court].").[3]

Fourth, North Carolina has a greater interest in this dispute than Georgia.  Approximately fifty-nine percent (59%) of Stabilization's past and present shareholders and members reside or have resided in the State of North Carolina, compared to only eleven percent (11%) in the State of Georgia.  The allegations in the complaint relate to decisions made by Stabilization in North Carolina with respect to assets located in North Carolina that allegedly are held for the benefit of all of Stabilization's members.  Stabilization is governed by the North Carolina Cooperative Marketing Act, and Stabilization's marketing agreements contain North Carolina choice of law clauses. Because North Carolina law predominates, a North Carolina federal court should have greater ease in applying local law.  See, e.g., Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 11 L. Ed. 2d 945 (1964) (trial in state in which federal judges are more familiar with the governing laws is a factor to be considered in motions to transfer); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 n.4 (7th Cir. 1986) (noting that familiarity of local law in the transferee court weighs in favor of transfer).

Finally, some courts have noted that a local jury should not be burdened by hearing a dispute that has little relationship to the forum.  Put another way, a controversy should be resolved where it is located.  See Bryant v. ITT Corp., 48 F. Supp.2d 829, 834 (M.D. Ill. 1999).  Although plaintiff resides in Georgia, his residence is not related to this dispute because the events described in the Complaint took place in North Carolina, and those events have their largest impact on North Carolina residents.  Thus, the jury burden is better left to the citizens and

---

[3] Although the two class actions presently are in North Carolina's state courts, the United States District Court for the Eastern District of North Carolina could more efficiently evaluate and coordinate discovery and other proceedings in plaintiff's federal court action with the parallel proceedings in North Carolina state court than could a relatively distant federal court in the Middle District of Georgia.

#840670_3.DOC

courts in the Eastern District of North Carolina, where this dispute is centered, where most of the witnesses and evidence are located, and where the events in question occurred.

> **5.      Plaintiff's choice of forum is entitled to minimal weight.**

While a plaintiff's choice of forum is entitled to some weight, this general rule does not apply where the plaintiff resides in a different district, or where the chosen venue has no connection to the plaintiff's underlying cause of action, or where a class action is alleged.  <u>See</u>, <u>e.g.</u>, <u>Chicago R.F. & P. Co. v. Igoe</u>, 220 F.2d 299, 304 (7th Cir. 1955), <u>cert. denied</u>, 350 U.S. 822, 100 L. Ed. 735, 76 S. Ct. 49 (1955) (finding that plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff"); <u>Production Group Int'l, Inc. v. Goldman</u>, 337 F. Supp. 2d 788, 799  (E.D. Va. 2004) ("Of course, little or no weight should be accorded to a plaintiff's choice of forum where that forum is neither the plaintiff's home forum nor a forum with any significant connection to the dispute."); <u>Georgousess v. Natec Resources, Inc.</u>, 963 F.Supp. 728, 730 (N.D.Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."); <u>Job Haines Home for the Aged v. Young,</u> 936 F. Supp. 223, 231 (D.N.J. 1996) (holding that the "convenience of the parties" element weighed in favor of transfer, even though the named plaintiffs resided in the transferor district, because the putative class was nationwide, the defendants were located in the transferee district, and there was no indication the class representative's participation would be more than minimal).

In this case, plaintiff's choice of forum is entitled – at most – to minimal weight because plaintiff does not reside in the Middle District of Georgia and his alleged class action bears little, if any, relationship to the Middle District of Georgia.  By contrast, the other factors weigh heavily in favor of a transfer for the reasons stated herein.

## <u>CONCLUSION</u>

For the foregoing reasons, Stabilization respectfully requests that this Court dismiss Count Four of the complaint and transfer the venue of the remainder of this case to the United States District Court for the Eastern District of North Carolina, Western Division.

This the 13th day of January, 2006.

By:    /s/ Gerald M. Edenfield          

Gerald M. Edenfield
Edenfield, Cox, Bruce & Classens, P.C.
115 Savannah Avenue
P.O. Box 1700
Statesboro, Georgia 30459
Telephone:  912-764-8600
Facsimile: 912-764-8862
E-mail:  gerald@ecbcpc.com

James K. Dorsett, III (admitted *pro hac vice*)
Donald H. Tucker, Jr. (admitted *pro hac vice*)
Jackson Wyatt Moore (admitted *pro hac vice*)
SMITH ANDERSON BLOUNT DORSETT
  MITCHELL & JERNIGAN, L.L.P.
2500 Wachovia Capitol Center
P.O. Box 2611
Raleigh, North Carolina 27602-2611
Telephone:  (919) 821-6681
Facsimile:  (919) 821-6800
E-mail:  jdorsett@smithlaw.com
E-mail:  dtucker@smithlaw.com
E-mail:  jmoore@smithlaw.com

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendant's Memorandum of Law in Support of its

Motion to Dismiss and to Transfer Venue, was filed with the Clerk of Court using the CM/ECF

System which in turn will send notification of such filing to the following:

Brent J. Savage
Savage, Turner, Pinson & Karsman
Post Office Box 10600
Savannah, Georgia 31412
E-mail:  bsavage@savagelawfirm.net

Frederick S. Bergen
Bergen & Bergen
123 E. Charlton Street
Savannah, GA 31401-4603
E-mail:  bergerlaws@aol.com

F. David McCrea
Law Office of David McCrea
Post Office Box 412
Alma, GA 31510
E-mail:  davidlaw@accessatc.net

This the 13th day of January, 2006.

_____
        /s/ Gerald M. Edenfield

#840670_3.DOC