**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| **JULIAN A. RIGBY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No.** |
| **FLUE-CURED TOBACCO** | : | **7:05-CV-122 (HL)** |
| **COOPERATIVE STABLIZATION** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

# ORDER

Before the Court is Defendant's Motion to Dismiss and Transfer Venue (Doc. 11), in which Defendant asks the Court to dismiss Plaintiff's breach of contract claim and transfer this case to the United States District Court for the Eastern District of North Carolina, Western Division. Plaintiff's Cross Motion to Transfer Venue (Doc. 18), in which the Plaintiff asks the Court to transfer this case to the United States District Court for the Southern District of Georgia, is also before the Court. For reasons explained herein, Defendant's Motion to Dismiss is denied, Defendant's Motion to Transfer Venue is granted, and Plaintiff's Cross Motion to Transfer Venue is denied.

## I. FACTS

This case arises out of a dispute between Defendant Flu-Cured Tobacco Cooperative Stabilization Corporation, a tobacco cooperative, and Plaintiff Julian A. Rigby, one of

Defendant's members. The cooperative was originally set up to administer the federal tobacco price support program; however, when the federal program was  phased out the cooperative began to explore new options that would allegedly benefit its members. According to Plaintiff, it is the termination of the cooperative's purpose which prompted this litigation. Plaintiff seeks the distribution of the cooperative's equity along with an accounting of his interest in the cooperative. Plaintiff also brings a breach of contract claim and a claim for attorney's fees. Defendant has filed a Motion to Dismiss Plaintiff's breach of contract claim and a Motion to Transfer Venue to the Eastern District of North Carolina, Western Division. Plaintiff has filed a Cross Motion to Transfer Venue to the Southern District of Georgia.

## II. ANALYSIS

### A. Motion to Dismiss

Defendant originally argued that Plaintiff's breach of contract claim should be dismissed for improper venue based on an exclusive forum selection clause contained within the standard marketing agreement, which dictated that any legal claims arising from the agreement should be brought in the courts of Wake County, North Carolina. Plaintiff responded by asserting that his breach of contract claim was not based on the standard marketing agreement submitted to the Court by Defendant, but was based on a letter received by him in December of 2004. In response, Defendant apparently concedes that Plaintiff's breach of contract claim should not be dismissed for improper venue, but that the

claim should, nevertheless, be dismissed for failing to properly state a cause of action. Defendant argues that no contract was formed between Defendant and Plaintiff because the December letter was not an offer to contract and, even if it was an offer, the Plaintiff did not accept the offer in the form specified.

A motion to dismiss does not test whether the plaintiff will prevail on the merits of the case; it tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the Court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999). If the facts contained in the complaint would allow the plaintiff to recover under any possible theory, the motion to dismiss must be denied. Linder v. Portocarrero, 963 F.2d 332, 336 (11th Cir. 1992). If, however, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the plaintiff's claim must be dismissed. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Further, the "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . exceedingly low." Ancata v. Prision Health Serv. Inc., 796 F.2w 700, 703 (4th Cir. 1985).

Under Georgia contract law,[1] the "essential elements of a breach of contract claim are

---

[1]As this is a diversity case, state substantive law will apply. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). To determine which state's substantive law will apply, courts use the choice of law rules of the forum state, which in this case is Georgia. See Klaxon Co. v. Stentor, 313 U.S. 487, 491, 61 S. Ct. 1020, 1020 (1941). Although the alleged contract in question may be governed by another state's law, the issue has not been addressed by either party. Further, there has been no evidence set forth that Georgia's body

3

(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." TDS Healthcare Systems Corp. v. Humana Hosp. Illinois, Inc., 880 F. Supp. 1572, 1583 (N.D.Ga.1995) (citing Cartin v. Boles, 155 Ga. App. 248, 252, 270 S.E.2d 799 (1980)). Plaintiff sets forth the following facts in his complaint: (1) Defendant sent an offer to Plaintiff in December of 2004; (2) Plaintiff accepted Defendant's offer to sell tobacco through Defendant's facilities; and (3) Defendant refused to allow Plaintiff to sell tobacco through Defendant's facilities.

Accepting these facts as true and construing all reasonable inferences in the light most favorable to Plaintiff, it is clear that Plaintiff's breach of contract claim meets the "exceedingly low" standard necessary to survive a motion to dismiss. First, Defendant extended an offer to Plaintiff to sell tobacco through Defendant's facilities and Plaintiff accepted that offer. Therefore, there was a valid contract between Plaintiff and Defendant. Second, Defendant refused to allow Plaintiff to sell tobacco through Defendant's facilities. Therefore, there was a material breach of the contract's terms. Third, although Plaintiff does not specifically quantify the damages he suffered, because all reasonable inferences are construed in favor of Plaintiff,  the Court determines that Plaintiff suffered damages as a result of Defendant's breach. Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of contract claim is denied.

---

of contract law significantly differs from the laws of other states. For these reasons, the Court will, for limited purpose of evaluating Defendant's Motion to Dismiss, apply Georgia substantive law.

By arguing that Plaintiff will be unable to provide evidence to support his claim, Defendant is essentially arguing that Plaintiff's claim would not survive a Motion for Summary Judgment. While the Court expresses no opinion on the outcome of any subsequent motion, such review is not appropriate at this early stage in the litigation. As Plaintiff alleged in his complaint that a valid contract was formed, that the contract was then breached, and that the breach caused damages, Plaintiff's breach of contract claim is sufficient to survive Defendant's Motion to Dismiss.

**B. Motion to Transfer Venue**

A district court, which has proper venue, may transfer an action to any other district "where it might have been brought" if the "convenience of [the] parties and witnesses [and] the interest of justice" warrant such a transfer. 28 U.S.C. §1404 (2000).  The threshold question in determining if a change of venue is warranted, is whether the suggested forum is one in which the case could have been properly brought originally. If the suggested forum is one in which the case could have been brought, courts then undertake "an individualized case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).

1. Proper Jurisdiction and Venue

Before the other convenience factors can be analyzed, a Court must determine whether the proposed district is one in which the claim could have been brought originally. The United States Supreme Court has interpreted this requirement to mean that (1) the

suggested court must have proper subject matter jurisdiction, (2) the suggested court must be able to exercise personal jurisdiction over all defendants, and (3) venue must be proper in the suggested forum. <u>Hoffman v. Blaski</u>, 363 U.S. 353, 344 (1960). Additionally, the burden of establishing these jurisdictional and venue requirements is on the party moving for the transfer. <u>In Richo Corp.</u>, 870 F.2d 570, 575 (11th Cir. 1989).

In this case, Defendant is a citizen and resident of the  Eastern District of North Carolina and at least a substantial part of the events giving rise to the claim occurred there as well. Federal subject matter jurisdiction has already been addressed by the Court in an earlier ruling; therefore, the proposed forum does have proper subject matter jurisdiction. Because the Defendant has significant ties to the proposed forum, including being a resident thereof, the proposed forum is able to exercise personal jurisdiction over Defendant. Finally, pursuant to  either 28 U.S.C § 1391(a)(1) or 28 U.S.C § 1391(a)(3), venue is proper in the proposed forum because Defendant resides in the proposed forum and at least a substantial part of the events giving rise to the claim occurred in the proposed forum. Accordingly, the United States District Court for the Eastern District of North Carolina, Western Division is a forum in which the claim could have been brought originally.

<u>2. Convenience and Fairness</u>

Courts consider three main factors in determining whether a proposed district will be more convenient than the current district: the convenience of the parties, the convenience of the witnesses, and the interests of justice. <u>See</u> 28 U.S.C. §1404 (2000).  In addition to

these three factors, courts also consider additional factors relevant to the determination. These additional factors include the following:(1) where the majority of the events at issue in the case took place; (2) the ability to compel the attendance of unwilling witnesses in the suggested forum; (3) the location of the physical evidence; and (4) the familiarity of the courts with the applicable law.[2] 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 111.13[1][b] (3d ed. 2005). Further, unless the plaintiff resides outside the chosen forum or the operative events occurred outside the forum, courts will accord great deference to the plaintiff's choice of forum. Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989).

i. *Convenience of the Parties*

Neither party directly addresses the convenience of the parties factor; however, trying this case in the state of Georgia would obviously be more convenient for Plaintiff, while trying this case in the state of North Carolina would obviously be more convenient for Defendant. Generally, when transferring a case would merely shift the burden of litigating the case in a foreign district onto the plaintiff, the convenience of the parties factor weighs in favor of preserving venue.  See Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (denying transfer when it would merely shift balance of convenience to the other party). "If, on the other hand, the plaintiff does not reside in the district in which he

---

[2] Other factors, which are not relevant in this case, are also considered: (1) relative court congestion in both the present and proposed districts; and (2) the existence of a forum selection clause.

7

or she brought the action, this fact militates in favor of a transfer to the district where the defendant resides, because the plaintiff will be inconvenienced by having to travel whether the action is transferred or not." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 111.13[1][e][i] (3d ed. 2005). Here, because Plaintiff does not reside in this district and Defendant resides in the proposed district, the convenience of the parties weighs in favor of transferring venue to the Eastern District of North Carolina.

*ii. Convenience of the Witnesses*

Defendant argues that almost all party witnesses and virtually every important non-party witness reside in the state of North Carolina. Further, Defendant understandably argues that requiring such witnesses to travel to this district would be highly inconvenient. Plaintiff admits that a majority of witnesses aligned with Defendant reside in the state of North Carolina; however, Plaintiff asserts that many of the non-party witnesses with information potentially relevant to this case reside in places other than North Carolina. Both parties identify a long list of potential witnesses to support their positions, yet the overwhelming majority of the individuals listed are party witnesses or witnesses that are closely aligned with one party. These types of witnesses are presumed to be willing to testify in either forum despite inconvenience. See FUL Inc. V. Unified School Dist. No. 204, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). Accordingly, the location of party witnesses is afforded little weight.

In contrast, the location of key non-party witnesses is afforded more weight in the

transfer analysis because they may be unwilling to testify, and the district in which the case is tried has a direct effect on whether parties can compel non-party witnesses to testify. In this case, the Court finds that approximately the same number of non-party witnesses are likely located in both forums. Without specific information about the potential testimony of these non-party witnesses, the Court cannot determine whether any of the identified non-party witnesses would be considered key to the resolution of the case. Therefore, because the Court finds that non-party witnesses are likely located in both forums, the convenience of the witnesses factor does not favor transfer to the Eastern District of North Carolina.

### iii. The Location Where the Majority of the Events Occurred

In this case, Plaintiff essentially claims that Defendant is improperly operating the cooperative. Accordingly, Defendant argues that the majority of events relevant to this action occurred in the proposed forum where Defendant's principal place of business is located. According to Defendant, all decisions concerning the operation of the cooperative were made in the proposed forum, the majority of the board members of the cooperative reside either in the proposed forum or in close proximity to the proposed forum, and the day-to-day operation of the cooperative occurs in the proposed forum.

Plaintiff, on the other hand, argues that the majority of relevant events did not occur in the proposed forum, but rather occurred throughout the southeast. According to Plaintiff, the crux of the case actually involves Defendant's interaction between its many members, which allegedly occurred throughout the five states in which Defendant's members are

located. The Court does not agree. Because Plaintiff is really challenging the decisions made by the individuals responsible for the long-term operation of the cooperative rather than the day-to-day operation of the cooperative, the Court determines that the majority of operative events occurred at Defendant's principal place of business, which is located in the proposed forum. Accordingly, this factor weighs in favor of transferring this case to the Eastern District of North Carolina.

> ### iv. The Location of Physical Evidence

Defendant argues that this case should be transferred to the proposed forum because the overwhelming majority of the relevant evidence is located in Illinois. Defendant asserts that all the relevant documentation that details the business decisions of the cooperative are located at its principal place of business located in the proposed forum. Plaintiff, in turn, argues that the relevant documentation is located throughout the states in which Defendant's members are located. Again, as discussed above, the Court determines that Plaintiff's claim is centered around the long-term operation of the cooperative rather than its day-to-day operation. Accordingly, because the Court finds that the overwhelming majority of the relevant documentation is located at Defendant's principal place of business, which is located in the proposed forum, this factor also weighs in favor of transferring this case to the Eastern District of North Carolina.

> ### v. Court's Familiarity with the Applicable Law

Although neither party directly addressed this issue as it relates to transferring the

case, Defendant, as part of its other arguments, asserted that this case should be transferred to the proposed forum because Defendant was organized under the laws of the state of North Carolina and is governed by the North Carolina Cooperative Marketing Act. Generally, courts sitting in the state whose substantive law applies are favored in determining whether a case should be transferred. <u>Van Dusen</u>, 376 U.S. at 645.  Thus, because the present case involves the interpretation of North Carolina law governing the operation of cooperatives, this factor also weighs in favor of transferring this case to the Eastern District of North Carolina.

### vi. Plaintiff's Choice of Forum

Finally, Defendant argues that Plaintiff's choice of forum should be given little weight because most of the operative events took place in North Carolina, Plaintiff does not reside in this district, and Plaintiff wishes to have this case certified as a class action.[3] Generally, a plaintiff's choice of forum is afforded significant weight and will not be disturbed unless the other factors substantially weigh in favor of transfer. <u>Peteet</u>, 868 F.2d at 1436. In contrast, a plaintiff's choice of forum is afforded less weight if the plaintiff resides outside the forum due to the difficulty plaintiff will have in showing why the original forum is more convenient. 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

---

[3] As this case has not yet been certified as a class action, the Court declines to consider the effect certification will have on the transfer analysis. <u>See</u> <u>Tramonte v. Chrysler Corp.</u>, 136 F.3d 1025, 1030 (5th Cir. 1998) (refusing to consider potential class members in reviewing a Judge's refusal decision because certification had not yet been granted).

PRACTICE ¶ 111.13[1][c][ii] (3d ed. 2005). Further, a plaintiff's choice of forum is also afforded little weight if the majority of the operative events occurred elsewhere. 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 111.13[1][c][iii] (3d ed. 2005).

As Plaintiff does not reside within this district and the Court has determined that the majority of the operative events occurred outside of this district, Plaintiff's choice of forum is clearly entitled to less weight. However, the Court finds that regardless of the weight given to Plaintiff's choice of forum, the other factors substantially weigh in favor of transfer. Therefore, the Court finds that the convenience of the parties and witnesses and the interest of justice warrant transferring this case to the Eastern District of North Carolina, Western Division.

## C. Plaintiff's Cross Motion to Transfer Venue

Plaintiff argues, as an alternative to transferring the case to the Eastern District of North Carolina, that the case should be transferred to the Southern District of Georgia, the district in which he resides. Although defendants are generally the party that moves for venue transfer, plaintiffs may also move to transfer the venue on convenience grounds. In this case, as Plaintiff is the party moving for the transfer, Plaintiff has the burden of establishing that the Southern District of Georgia would be a more convenient forum than the Eastern District of North Carolina. In Richo Corp., 870 F.2d 570, 575 (11th Cir. 1989). As Plaintiff offers little more than a conclusory statement that the Southern District of Georgia would be at least as convenient at the Middle District of Georgia, the Court finds

that Plaintiff has failed to meet his burden. Therefore, Plaintiff's Cross Motion to Transfer Venue is denied.

**III. CONCLUSION**

For the forgoing reasons, Defendant's Motion to Dismiss is denied,  Defendant's Motion to Transfer Venue is granted, and Plaintiff's Cross Motion to Transfer Venue is denied.

**SO ORDERED**, this the 11th day of May, 2006.


s/     **Hugh Lawson**
**HUGH LAWSON, Judge**


scs